FILED & JUDGMENT ENTERED
Steven T. Salata

May 18 2016

Clerk, U.S. Bankruptcy Court
Western District of North Carolina

_Laura T Beyer_
Laura T. Beyer
United States Bankruptcy Judge

**UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION**

| | |
|---|---|
| In re: ) | |
| ) | |
| **CHARLOTTE LEIGH GREEN,** ) | Chapter 7 |
| ) | Case No. 15-50867 |
| Debtor. ) | |
| _____) | |

**ORDER GRANTING MOTION FOR DETERMINATION**

**THIS MATTER** is before the court on the Motion for Determination ("Motion") filed by the Debtor on March 22, 2016. The Chapter 7 Trustee for this case filed a Trustee's Response to Debtor's Motion for Determination ("Response") on March 25, 2016, and the court conducted hearings on the Motion on April 8, 2016[1] and May 6, 2016. The Debtor, her attorney, and the Chapter 7 Trustee appeared at the May 6 hearing.

The Debtor commenced this case by filing a Chapter 7 voluntary petition on December 28, 2015. The Debtor scheduled a priority debt in the amount of $0 to Micah Green ("Green")[2] for

---

[1] Nothing happened at the April 8 hearing other than the announcement of the continuance of the hearing to May 6.

[2] Green was previously a debtor in Chapter 7 case no. 15-50652 in this court. The Debtor served the Motion on Green, Green's bankruptcy attorney, and the

"Alimony payments due to Micah per the separation agreement" and included a $2000/month payment for alimony, maintenance, and support in her budget. According to the Motion, the Debtor found a cashier's check payable to Green in the amount of $11,000 on or about February 22, 2016 as she sorted through files in connection with preparation of her tax return. The cashier's check is dated June 4, 2015 and is marked "balance due alimony and bonus." The Motion says that the Debtor believes that the check represents her payment of five months of alimony to Green and an additional $1000 for Green's share of a bonus that the Debtor received from her employer, the Debtor did not know that the check had not been cashed until she found it in February, and the Debtor thought the check had been remitted to Green. The Motion notes that the Debtor did not list this check or an $11,000 debt to Green in her bankruptcy schedules and asks the court to determine that the check is not property of the Debtor or the Debtor's estate and to allow the Debtor to remit the check to Green. The Trustee's Response says the funds represented by the cashier's check are property of the Debtor's estate without any explanation or support.

At the May 6 hearing, the Debtor's attorney summarized the facts alleged in the Motion and argued that the Debtor did not have any legal or equitable interest in the check when she filed her petition. According to the Debtor's attorney, the funds

---

Chapter 7 trustee for Green's case, but they did not file responses or appear at the hearings on the Motion.

represented by the check will eventually be delivered to Green regardless of the court's ruling on the Motion, and allowing the Debtor to send the check directly to Green would be more efficient than turning the check over to the Trustee. The Trustee claimed that this situation was no different from a debtor who wrote an unnegotiated personal check (where the "money in her bank account" related to the unnegotiated check would be property of the bankruptcy estate) or a debtor who found $11,000 in cash that he had intended to deliver to someone else. When asked whether he agreed that the funds represented by the check would go to Green regardless of the ruling on the Motion, the Trustee said he had not reviewed the claims filed in this case.[3] Before the hearing concluded, the Debtor's attorney added that the Debtor found the check in a box that was "jointly held" by the Debtor and Green and that the Debtor recovered the box from Green in order to prepare her taxes, so the box (and the check) may not have been in the Debtor's possession when this case commenced. The Debtor's attorney offered to have the Debtor testify about the circumstances surrounding the check, but the Trustee said his position was purely legal and possession of the check would not matter, just as it would not matter in the case of a personal check.

Due to time considerations and the Trustee's argument that this matter could be decided as a matter of law, the court did

---

[3] Green's $15,000 priority claim for alimony is the only proof of claim filed in this case.

not take any evidence at the May 6 hearing. Under the facts as alleged by the Debtor and not contradicted by the Trustee, however, the court cannot conclude that the check is the property of the bankruptcy estate as a matter of law or adopt the Trustee's argument that the negotiation of a cashier's check is no different from the transfer of a personal check or cash. For example, a cashier's check is "drawn by a bank on itself," while a personal check is "drawn on a person's own account." BLACK'S LAW DICTIONARY 269 (9th ed. 2009). The funds associated with a cashier's check are removed from the purchaser's account when the bank issues the check, but the funds associated with a personal check do not leave the issuer's account until the check is cashed. Accordingly, while the funds represented by a personal check are not considered to be transferred until the check is honored, the date of delivery of a cashier's check is the date of the transfer. Hall-Mark Elecs. Corp. v. Sims (In re Lee), 179 B.R. 149, 160—62 (B.A.P. 9th Cir. 1995); see also FCX, Inc. v. Ocean Oil Co., 266 S.E.2d 388, 391 (N.C. Ct. App. 1980) (finding retention of an undeposited cashier's check to be sufficient acceptance of a settlement). The court does not know whether the Debtor or Green was in possession of the check on the petition date.

Given the uncertainty about the facts underlying this situation, the Trustee's contention that the facts are irrelevant, and the complexity involved in navigating the

Uniform Commercial Code and other relevant law, the court will use its limited authority under 11 U.S.C. § 105 to resolve the Motion based on practical and equitable considerations. The Debtor did not gain any advantage by retaining or regaining the check during this case, the Trustee has not alleged any improper motive on the part of the Debtor, and the Debtor only wants to deliver (or re-deliver) the check to Green as she originally intended. Allowing the Debtor to deliver the check to Green is in the best interests of the Debtor and Green and does not harm any other parties. If the court grants the Motion, Green gets the check immediately and the Debtor's alimony debt is reduced by $11,000. Green is the only creditor of the Debtor with an allowed claim as of the date of this order, and his priority claim for a domestic support obligation ("DSO") would outrank most other claims under the Bankruptcy Code. Therefore, to require the funds to be deposited with the Trustee would likely only delay Green's receipt of funds that are intended for his support, reduce the amount of the funds delivered to Green by the costs of the administration of the Debtor's estate (an estate that will likely consist entirely of the funds from the check), and, since Green's DSO claim is not dischargeable, damage the effectiveness of the "fresh start" sought by the Debtor through this case. Cf. Rushton v. Bank of Utah (In re C.W. Mining Co.), 477 B.R. 176, 190 (B.A.P. 10th Cir. 2012) (refusing to avoid transfer where the only benefit would be to

the bankruptcy trustee and concluding that increased administrative costs were not a benefit to a bankruptcy estate as required by 11 U.S.C. § 550). Equitable and practical considerations counsel this court to cut out the middleman in this situation and to allow the Debtor to deliver the check directly to Green.

Accordingly, the Motion is hereby **GRANTED,** and the Debtor's attorney is hereby **ORDERED** to deliver the cashier's check to Green.

**SO ORDERED.**

This Order has been signed                    United States Bankruptcy Court
electronically. The Judge's
signature and Court's seal
appear at the top of the Order.